IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JACINTA DOWNING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Judge James B. Zagel |
| v. ) | |
| ) | Case No. 15-cv-05921 |
| ABBOTT LABORATORIES and ABBOTT ) | |
| MOLECULAR INC., ) | Jury Trial Demanded |
| ) | |
| Defendants. ) | |
| ) | |

## AMENDED COMPLAINT

Plaintiff Jacinta Downing, by and through her attorneys, for her Complaint against the Defendants, Abbott Laboratories and Abbott Molecular Inc., alleges as follows:

### JURISDICTION AND VENUE

1. Plaintiff's claims arise under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964 as amended ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17, and this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343.

2. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b). Defendants Abbott Laboratories and Abbott Molecular Inc. are licensed to do business and maintain offices in this District, and the unlawful conduct alleged in this Complaint occurred in this District.

### PARTIES

3. Defendant Abbott Laboratories is an integrated Fortune 200 healthcare company that provides diagnostics, medical devices, nutrition, and pharmaceuticals. Incorporated in Illinois in 1900 where it still maintains its headquarters, Abbott Laboratories employs

approximately 77,000 persons in more than 150 countries worldwide. In 2014, Abbott Laboratories reported net sales of approximately $20.25 billion.[1]

4. Defendant Abbott Molecular Inc. is a subsidiary of Abbott Laboratories and is incorporated in Delaware and headquartered in Illinois. Abbott Molecular Inc. markets and sells over 350 products and services related to molecular diagnostics and the analysis of DNA, RNA, and proteins at the molecular level. Abbott Laboratories and Abbott Molecular Inc. are hereinafter referred to collectively as "Abbott."

5. Plaintiff Jacinta Downing, a resident of Illinois, is African American and was employed by Abbott from 2003 until her unlawful termination in 2015.

## FACTUAL ALLEGATIONS

6. Plaintiff began her employment with Abbott as a Molecular Area Manager in or around December 2003 and remained a devoted and successful employee until Abbott unlawfully terminated her in 2015. She earned both the President's Club award—the highest designation for a salesperson at Abbott—and the Manager of the Year award multiple times before earning a promotion to Regional Sales Manager. Plaintiff maintained her exceptional performance following her promotion and led her team to consistent year-over-year sales growth.

7. In spite of Plaintiff's proven success in sales and management, Abbott subjected Plaintiff and other African American employees to racial discrimination and a hostile work environment, including but not limited to the following:

    a. Failing to hire African Americans;

    b. Underutilizing African Americans in high-level and/or management positions;

    c. Denying African Americans income and advancement opportunities;

    d. Failing to accord African Americans with the same level of respect as non-

---

[1] Abbott Laboratories, Annual Report (Form 10-K) (Feb. 27, 2015).

    African Americans;

 e. Failing to recognize or credit the accomplishments of African Americans on the same basis as non-African Americans;

 f. Failing to extend African Americans the normal courtesies extended to non-African Americans;

 g. Subjecting African Americans to a higher level of scrutiny than non-African Americans;

 h. Subjecting African Americans to inaccurate and discriminatory performance reviews and employing performance management practices with a disparate impact;

 i. Making employment decisions based on racial stereotypes;

 j. Negligently hiring and/or retaining individuals with known propensities to discriminate against or harass African Americans;

 k. Creating an environment that is hostile and offensive to African Americans by, among other things, marginalizing African Americans and openly subjecting them to ridicule, bullying, harassment, and micromanagement;

 l. Disregarding African Americans' complaints of unlawful discrimination; and

 m. Retaliating against African Americans who oppose unlawful discrimination by, among other things, subjecting them to further discrimination, retaliation, verbal attacks, discipline, and/or termination.

8. Plaintiff consistently and courageously opposed Abbott's unlawful discrimination and hostile work environment.  For instance, Plaintiff challenged not only her own unlawful treatment, but also the same unlawful treatment of Abbott's only other female African American

Regional Sales Manager. Similarly, Plaintiff opposed and reported her supervisor's discrimination and harassment of an African American female who reported to Plaintiff, and refused to issue the employee discriminatory discipline when directed to do so by her supervisor.

9. Rather than using Plaintiff's complaints of racial discrimination as an opportunity to create equal opportunity employment, Abbott defended and supported discriminators, including Plaintiff's supervisor. Furthermore, Abbott retaliated against Plaintiff by subjecting her to an escalating campaign of harassment and discrimination and ultimately terminating her under the guise of a reduction in force ("RIF").

10. In spite of Abbott's continual discrimination and retaliation, Plaintiff continued outperforming her peers. Nonetheless, in response to Plaintiff's opposition to Abbott's unlawful discrimination, Plaintiff's supervisor, who was empowered by Abbott to take tangible employment actions against Plaintiff, made racially charged and derogatory remarks to Plaintiff. He failed to recognize Plaintiff's objective accomplishments and refused to give her the positive review warranted by her work. In fact, he explicitly chastised Plaintiff for lodging a complaint of discrimination with Employee Relations and criticized her for being confrontational during her performance review.

11. Shortly thereafter, Plaintiff's supervisor placed Plaintiff on a disciplinary "Coaching Plan" and, later, a performance improvement plan ("PIP"). Like her negative performance reviews, Plaintiff's Coaching Plan and PIP were baseless and plainly pretextual. Indeed, at the time she was put on the Coaching Plan, Plaintiff was ranked first among Regional Sales Managers in Abbott's stack rankings and four of her direct reports ranked in the top 10 of their respective stack rankings. Worse, Abbott offered to remove Plaintiff from the PIP in exchange for taking a demotion.

12. Notwithstanding Abbott's ongoing harassment, discrimination, and retaliation, Plaintiff continued her excellent work and successfully completed her PIP. Even more impressive, Plaintiff again earned both the President's Club award and the Regional Manager of the Year award for 2013. However, consistent with its pattern of discrimination and retaliation, Abbott refused to acknowledge Plaintiff or her accomplishments at its annual kickoff meeting in or around January 2014. Among other things, Abbott excluded Plaintiff from management activities, refused to publicly recognize her Manager of the Year award, and even stripped her of the President's Club award, thus foreclosing her from the $10,000 President's Club bonus.

13. Abbott's race- and gender-based harassment, discrimination, and retaliation against Plaintiff created a work environment that was both subjectively and objectively offensive. In spite of Plaintiff's consistent opposition to racial and gender animus and appeals to Abbott for assistance, Abbott's severe and pervasive campaign of discrimination and retaliation continued to alter the terms and conditions of her employment. Convinced that Abbott's human resources department ("HR") was devoted to assisting management in orchestrating cause for her termination rather than investigating employee complaints of discrimination, Plaintiff formally filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 10, 2014.

14. Rather than cooperating with Plaintiff and the EEOC or taking any meaningful corrective action, HR became the architect of Plaintiff's termination. Having failed to build a case against Plaintiff to warrant her termination through its discriminatory scrutiny and discipline, Plaintiff's supervisor and Abbott's HR opted to include Plaintiff in a RIF in 2015. On information and belief, Abbott's RIF disproportionately eliminated the jobs of African American and female employees. Abbott also included in the RIF the only other female African American

5

with Plaintiff's job title, who had similarly opposed Abbott's unlawful discrimination and retaliation. Immediately upon notifying Plaintiff of the RIF, Abbott sought to obtain a general release of Plaintiff's legal claims. While Plaintiff refused to sign this release, other victims of the same discrimination did sign the release.

15. Even after Abbott terminated Plaintiff, Abbott continued to subject her to discrimination and retaliation. For example, notwithstanding the RIF, for some time prior to Plaintiff's termination Abbott was realigning its workforce and creating and filling vacant positions. After the RIF, Abbott invited Plaintiff and the other terminated African American woman to apply for open positions. Despite Plaintiff's qualifications and previous successes, due to Abbott's racial animus and Plaintiff's and her coworker's opposition thereto, Abbott never gave them any consideration for these positions. As further retaliation and pretext for its discrimination and retaliation, Abbott hired an African American male from outside the company to fill the position for which Plaintiff applied.

16. Plaintiff challenges the events leading up to her termination, as well as Abbott's RIF, under theories of both differential treatment and disparate impact.

17. Abbott's unlawful discrimination and retaliation caused Plaintiff to suffer significant financial losses and irreparably damaged Plaintiff's career. Abbott's unlawful discrimination and retaliation further caused Plaintiff emotional distress and other non-pecuniary losses.

18. Punitive damages are appropriate because Abbott's conduct was malicious and/or Abbott was recklessly or callously indifferent to the statutorily protected rights of Plaintiff.

## COUNT I

### RACIAL DISCRIMINATION IN VIOLATION OF
### 42 U.S.C. § 1981

19. Plaintiff realleges the above paragraphs and incorporates them by reference as though fully stated herein as part of Count I of this Complaint.

20. Section 1977 of the Revised Statutes, 42 U.S.C. § 1981, as amended, guarantees persons of all races the same right to make and enforce contracts, regardless of race. The term "make and enforce" contracts includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship, including employment relationships.

21. By the acts and conduct described above, Abbott engaged in illegal intentional racial discrimination against Plaintiff in violation of 42 U.S.C. § 1981.

22. Plaintiff has been harmed as a direct and proximate result of Abbott's unlawful conduct.

## COUNT II

### RETALIATION IN VIOLATION OF
### 42 U.S.C. § 1981

23. Plaintiff realleges the above paragraphs and incorporates them by reference as though fully stated herein as part of Count II of this Complaint.

24. Under Section 1977 of the Revised Statutes, 42 U.S.C. § 1981, as amended, it is unlawful to retaliate against any individual for engaging in protected activity, such as reporting employment discrimination.

25. Plaintiff engaged in protected activity by opposing and reporting Abbott's unlawful discriminatory conduct to her managers and to Abbott's Employee Relations

department, and by filing a charge of discrimination against Abbott with the Equal Employment Opportunity Commission.

26. Abbott subjected Plaintiff to additional discrimination and retaliation because she engaged in protected activity.

27. Plaintiff has been harmed as a direct and proximate result of Abbott's unlawful conduct.

## COUNT III

### RACIAL DISCRIMINATION IN VIOLATION OF TITLE VII

28. Plaintiff realleges the above paragraphs and incorporates them by reference as though fully stated herein as part of Count III of this Complaint.

29. Title VII makes it unlawful for an employer to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of race.

30. By the acts and conduct alleged above, Abbott engaged in illegal racial discrimination against Plaintiff in violation of Title VII.

31. Plaintiff has been harmed as a direct and proximate result of Abbott's unlawful conduct.

## COUNT IV

### SEXUAL DISCRIMINATION IN VIOLATION OF TITLE VII

32. Plaintiff realleges the above paragraphs and incorporates them by reference as though fully stated herein as part of Count IV of this Complaint.

33. Title VII makes it unlawful for an employer to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of sex.

34. By the acts and conduct alleged above, Abbott engaged in illegal sexual discrimination against Plaintiff in violation of Title VII.

35. Plaintiff has been harmed as a direct and proximate result of Abbott's unlawful conduct.

## COUNT V

### RETALIATION IN VIOLATION OF
### TITLE VII

36. Plaintiff realleges the above paragraphs and incorporates them by reference as though fully stated herein as part of Count V of this Complaint.

37. Title VII makes it unlawful for an employer to retaliate against an employee because that employee engaged in protected activity, such as filing a charge of discrimination against her employer or complaining to her employer about discrimination on the job.

38. Plaintiff engaged in protected activity by opposing and reporting Abbott's unlawful discriminatory conduct to her managers and to Abbott's Employee Relations department, and by filing a charge of discrimination against Abbott with the Equal Employment Opportunity Commission.

39. Abbott subjected Plaintiff to additional discrimination and retaliation because she engaged in protected activity.

40. Plaintiff has been harmed as a direct and proximate result of Abbott's unlawful conduct.

**WHEREFORE**, Plaintiff requests the entry of judgment in her favor and against Abbott as follows:

    a. Declare that the acts and conduct of Abbott are unlawful and violate 42 U.S.C. § 1981 and Title VII;

9

b. Award Plaintiff the value of all compensation and benefits lost as a result of Abbott's unlawful conduct;

c. Award Plaintiff the value of all compensation and benefits she will lose in the future as a result of Abbott's unlawful conduct;

d. Award Plaintiff compensatory damages, including but not limited to damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses;

e. Award Plaintiff punitive damages due to Abbott's malicious conduct and/or Abbott's reckless or callous indifference to the statutorily protected rights of Plaintiff;

f. Award Plaintiff prejudgment interest;

g. Award Plaintiff attorneys fees, costs, and disbursements; and

h. Award Plaintiff such other make whole equitable, injunctive, and legal relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Respectfully Submitted,

*/s/ Linda D. Friedman*
*Attorney for the Plaintiff*

STOWELL & FRIEDMAN, LTD.
303 W. Madison
Suite 2600
Chicago, Illinois 60606
Phone: 312.431.0888
Fax:    312.431.0228

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on December 1, 2015, he caused a true and correct copy of the attached *Amended Complaint* to be served upon all counsel of record via ECF.

*/s/ Darin M. Williams*